IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. _____

| | |
|---|---|
| NEVADA D. ROWELL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE CHARLOTTE-MECKLENBURG )<br>HOSPITAL AUTHORITY, d/b/a )<br>ATRIUM HEALTH, INC., )<br>)<br>Defendant. ) | **COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiff, complaining of the Defendant, alleges and says:

## I. INTRODUCTION AND JURISDICTION

1. Plaintiff files this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, as amended, and the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et. seq.*, the Americans Disabilities Act Amendment Act of 2008 ("ADAAA") and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et. seq.* Plaintiff's claims arise from unlawful discrimination practices based on gender, disability and violations of the Family Medical Leave Act.

2. Jurisdiction of the court is invoked pursuant to 28 U.S.C. § 1343, this being a proceeding seeking to enforce rights and remedies secured by Title VII and the ADAAA. Jurisdiction is also conferred upon this court by 28 U.S.C. §1331.

3. Jurisdiction is further invoked pursuant to 28 U.S.C. §§2201 and 2202, this being an action for declaratory judgment declaring illegal acts of Defendants complained of herein which violate rights secured to the Plaintiff by Title VII and ADAAA.

1

## II. PARTIES

4. Plaintiff is an African-American male citizen of Charlotte, Mecklenburg County, North Carolina.

5. Defendant, the Charlotte-Mecklenburg Hospital Authority ("CMHA" is a municipal corporation, incorporated in the State of North Carolina and is registered and licensed to do business in the State of North Carolina. Defendant is a major health care provider in Charlotte, North Carolina. Defendant Atrium Health, Inc. is a non-profit corporation registered in North Carolina. and operates under the name Atrium Health, Inc. It owns and operates several practices and specialty practices, including Sports Medicine and Injury Care located at 3030 Randolph Road, Charlotte, North Carolina 28211.

## III. FACTS

6. Plaintiff was employed on or about April 10, 2017 as an Access/Outreach Specialist on the Live Answer Team. Plaintiff was employed at Defendant's Sports Medicine and Injury Care located at 3030 Randolph Road, Charlotte, North Carolina 28211. At the time of his application, Plaintiff made Defendant aware that he suffered from a health condition which affected his breathing. As such, he notified his managers once hired of his need for occasional breaks to use his inhaler and/or nebulizer.

7. Plaintiff was assigned to work as a Live Answer teammate and was responsible for responding to calls requesting appointments or other information from patients. Plaintiff's work included managing said calls for other sites in the Charlotte area. Plaintiff reported to a Manager, Meredith Snipes. Plaintiff and other members of his team worked in a windowless office with the door closed. They worked in close proximity to each other as they answered calls. When a team member is unable to take a call, the team member's que is suspended. In addition, when team

2

members take a break they are not expected to be answering calls. Team members are given breaks in the morning and afternoon and a lunch break.

8. Plaintiff's Manager, Meredith Snipes, a white female, reported to a Clinical Director, Amy Dixon, a white female.

9. In October, 2018, Plaintiff learned that a Referral Coordinator position was going to be vacated and expressed an interest in acquiring the skills needed for that job so that he might qualify for the position once it became vacant. In response to his expression of an interest in the position, Plaintiff was allowed to cross-train for that position. He continued to perform his duties as Live Answer Representative and began receiving two days of training before taking on the full responsibilities of the position of the Referral Coordinator. Plaintiff became proficient in the job and was asked to train another member at a different location in those duties and responsibilities. Plaintiff inquired on numerous occasions about the Referral Coordinator position being posted and was told that it eventually would be and that he would be compensated when the position was opened. In or about January, 2019, he was advised that the Referral Coordinator position would not be filled.

10. In late December, 2018, the other employees on the Live Answer team began expressing frustration to management that another Live Answer representative needed to be hired because Plaintiff was having to spend much of his time performing the duties of Referral Coordinator. Because of the conflict in performing all of his Live Answer representative duties and the Referral Coordinator duties without any additional assistance for the Live Answer team, Plaintiff expressed to management his desire to do only one of the positions. Meredith Snipes, his Supervisor, advised him that he could not discontinue either position.

11. Despite being told that the Referral Coordinator position would not be filled, Defendant announced on or about March 19, 2019 that Jasmine Agati from Sports Medicine and Injury Care, Ballantyne Office, was promoted to Referral Coordinator at Sports Medicine and Injury Care - Randolph Road. Plaintiff learned from Agati that she did not want the position and felt that she had been forced to take the position by Meredith Snipes. On or about April 11, 2019, Agati gave a two weeks notice of her resignation and let it be known that she felt that she was being forced into something that she did not want to do and as a result left the job even before completing the two weeks notice.

12. On May 29, 2019, Defendant announced that Juan Rivera was filling the position of Referral Coordinator – Randolph Road. Plaintiff was forced by Meredith Snipes to train him on the Referral Coordinator position.

13. At no time during his employment as a Referral Coordinator was Plaintiff told that he was not qualified for the job.

14. Plaintiff suffered retaliatory disciplinary actions by Meredith Snipes who claimed that he was purposely trying to obtain over time since the month of November and that he was violating her rules by not taking lunch in a timely manner and not taking enough time. This disciplinary action was issued against the Plaintiff even though the Plaintiff had advised Meredith Snipes that he could not go to lunch always as scheduled because he was on the phone obtaining authorizations from insurance companies and that his work otherwise did not permit him to take the time as designated.

15. On or about January 14, 2019, Plaintiff submitted a dispute against the written counseling. A meeting was eventually scheduled with Vice-President Brian Middleton. The disciplinary action as upheld.

16. On or about January 17, 2019, Plaintiff began to experience right side chest tightness and he notified his teammates as well as management. After a few weeks of continued right side chest pain, Plaintiff sought emergency care on February 1, 2019. Plaintiff informed the Clinical Director, Amy Dixon, as well as his Manager, Meredith Snipes, by text message. Snipes complained that Plaintiff was not at work and attempted to issue a disciplinary action against him. Plaintiff was able to obtain an FMLA statement from his pulmonary provider to show Meredith Snipes. On or about March 14, 2019, Plaintiff visited his primary care provider for the continued right side chest pain and expressed concerns about his inability to sleep due to persistent work related issues. He was prescribed an antidepressant for the stress and anxiety caused by his work environment.

17. Plaintiff sought and was approved for FMLA intermittent leave to address his pulmonary disabilities – Restrictive Lung Disease and Bronchitis Obliterans. Despite being aware that Plaintiff had been approved for FMLA leave, Meredith Snipes continually miscoded his FMLA time out of the office, resulting in incorrect pay checks for him. Plaintiff brought this to the attention of Human Resources and expressed concern that it was all in retaliation for his complaints about mistreatment. Plaintiff learned that Meredith Snipes had obtained training on how to properly enter codes for his leave, but she repeatedly failed to do so.

18. Plaintiff experienced inappropriate sexual conduct by Meredith Snipes and his teammates. In October, 2018, a patient at the Randolph Road office came in and asked to speak with the Plaintiff. Meredith Snipes lied to that patient by saying that Plaintiff did not work at the location. When Plaintiff asked her why she told the patient that Plaintiff did not work there, she said "I did not want to hurt his feelings as he may have been expecting a sweet blond." Plaintiff reported that comment to Amy Dixon and explained that he was offended. He also told her directly

5

that he thought he was being denied an interaction with a patient based upon his race, sex as well as his sexuality. He was assured by Dixon that she would address the issue with Meredith Snipes and that it would not happen again. However, as he continued to perform his duties as a Live Answer representative, Meredith Snipes proceeded to make comments about his attire and made comments such as "you are so gay" in front of his teammates which embarrassed him and subjected him to harsh and rude looks from his teammates.

19. Plaintiff reported Meredith Snipes' additional comments to the Clinical Director Amy Dixon and again told her that those comments were offensive to him. Dixon proceeded by saying that she thought that Snipes was socially awkward, that she could not believe that Meredith Snipes would say such things and that he should just "deal with it."

20. At some point, Atrium Health released an LGBTQ Pride t-shirt. Plaintiff purchased one and wore it to work. Meredith Snipes asked him if he had the shirt made personally. She responded that Atrium Health does not have "those type of things." Plaintiff reported this remark to Amy Dixon who advised him to just deal with it.

21. After learning that Plaintiff had filed a Charge of Discrimination with the Equal Employment Opportunity Commission, Meredith Snipes' behavior directed towards him included counseling for alleged performance deficiencies regarding his duties as a Live Answer representative. Some of that discipline was based upon comments allegedly made by his teammates and some of it, at least three times, he was accused of being in "not ready status" for significant periods of time. Those were times when Plaintiff needed to use his nebulizer or inhaler and had stepped out of the room. His actions were covered by Plaintiff's FMLA intermittent leave.

22. Plaintiff sought transfers from his department because he wanted to get away from the offensive work environment. However, he was prohibited from transferring once Meredith

6

Case 3:20-cv-00122-RJC-DSC   Document 1   Filed 02/27/20   Page 6 of 11

Snipes began papering his files with counseling and disciplinary action. Plaintiff believes that her actions were done in retaliation for his complaints and in an effort to make him endure the hostile work environment to which he was being subjected.

23. Plaintiff was subjected to name calling by teammates including "bitch male," "drama queen," "faggot," "faggot motherfucker," and disapproving looks and facial expressions.

24. Plaintiff reported this offensive behavior to Human Resources. To Plaintiff's knowledge, nothing was done to prevent the behavior from continuing. Further, Plaintiff saw himself being subjected to more disciplinary actions for phone related issues. Plaintiff was faced with a final written warning on July 27, 2019. Meredith Snipes advised him that she had been advised by the cleaning maintenance crew that he was not in his work area. The cleaning maintenance team's schedule begins at 4 o'clock p.m. Plaintiff's schedule was from 7 a.m. until 4 p.m. If the cleaning maintenance crew saw Plaintiff out of his work area after 4 p.m., Plaintiff would not have been abandoning his work, as his work schedule was over at 4 p.m. Plaintiff advised Human Resources and the Clinical Director that he was being harassed by Meredith Snipes by being followed to the bathroom, to the point of her even standing outside of the restroom to time his bathroom breaks. Plaintiff advised Human Resources that he believed that the actions were discriminatory based on his race, sex, sexuality and in retaliation for complaining about discrimination.

25. Plaintiff was terminated from his employment on July 30, 2019.

## IV. CLAIMS FOR RELIEF

### First Cause of Action: Title VII, Sex Discrimination

26. Plaintiff realleges paragraphs 1 through 25 above.

27. Plaintiff was subjected to a hostile work environment based on his sex. He was subjected to inappropriate comments by his direct Manager and his co-workers. When he complained to management about the behavior by his Manager, he was told on at least two occasions that he should just "deal with it." No action was taken against his Manager to rectify the problem.

28. The actions taken by the Manager and his co-workers was both severe and pervasive and both subjectively and objectively offensive. Plaintiff suffered adverse employment actions based on the behavior of his Manager when he was subjected to discipline and subsequently terminated.

29. As a result of the Defendant's actions, Plaintiff suffered economic and non-economic damages including emotional distress, depression and anxiety.

30. The actions complained of herein violate Title VII of the Civil Rights Act of 1964, as amended. Plaintiff is entitled to compensatory damages.

**Second Cause of Action: Americans with Disabilities Act Amended Act**

31. Plaintiff re-alleges paragraphs 1 through 30 above.

32. Plaintiff has identified himself as a person with a disability and did so on his initial application. Plaintiff sought an accommodation for his disability, which included him being able to step away from his work place to utilize his nebulizer or his inhaler. Plaintiff also obtained FMLA intermittent leave to cover times when he would be away from work because of his illness.

33. Plaintiff's Supervisor and Clinical Director were made aware of his medical condition and his approved FMLA leave. Despite this, Plaintiff was disciplined for being in a not ready call status while he had to be away to use his nebulizer or inhaler.

8

Case 3:20-cv-00122-RJC-DSC   Document 1   Filed 02/27/20   Page 8 of 11

34. Defendant's actions complained of herein violate the Americans With Disabilities Act Amendment Act ("ADAAA").

35. Plaintiff is entitled to damages for the violation of the Americans With Disabilities Act Amendment Act.

### Third Case of Action – Title VII – Retaliation

36. Plaintiff re-alleges Paragraphs 1 through 35 above.

37. Plaintiff notified the Clinical Director that his Supervisor was making inappropriate remarks about his sexuality. Plaintiff's Supervisor took no action with respect to Plaintiff's complaint other than to tell the Plaintiff to deal with it. This occurred on more than one occasion and the conduct of Plaintiff's Supervisor continued. In addition to the inappropriate conduct of the Plaintiff's Supervisor, members of Plaintiff's team also began to engage in that inappropriate conduct as well. This behavior began after Plaintiff initially complained of discriminatory conduct to his Clinic Director and continued after Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on February 22, 2019.

38. After filing the Charge of Discrimination with the EEOC, Defendant disciplined Plaintiff and ultimately discharged the Plaintiff. Plaintiff was discharged on July 30, 2019, approximately four months after his Charge was filed and within four months of the time that Defendant was notified of the Charge.

39. Defendant's actions were taken because of his engagement in protected activity and resulted in economic and emotional harm to the Plaintiff.

40. As a result of Defendant's retaliatory behavior, Plaintiff has suffered a loss of employment and attendant benefits.

41. Defendant's actions violate Title VII of the Civil Rights Act of 1964, as amended.

### Fourth Cause of Action - FMLA – Retaliation

42. Plaintiff re-alleges Paragraphs 1 through 41 above.

43. Plaintiff requested and was approved for Family Medical Intermittent Leave. Plaintiff utilized his intermittent leave when he had to take time away from his desk to use his inhaler and nebulizer. Plaintiff also utilized time away from work to seek medical care for conditions related to the covered illness under his approved FMLA request.

44. Plaintiff's use of the intermittent FMLA leave was interfered with by his Supervisor who disciplined him for being away from his work station when he needed to use his inhaler and nebulizer. The Supervisor also threatened to discipline him when he was away from the job site because he sought medical care for the covered condition.

45. Plaintiff was terminated from his position based on Defendant's disciplinary actions, including the most recent of which were for him being away from his workstation.

46. Defendant's violations violate the Family Medical Leave Act because it interfered with his right to take intermittent leave to address his medical condition.

47. Defendant is liable to the Plaintiff for damages under the Family Medical Leave Act.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

48. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission alleging sex, race, disability and retaliation on February 22, 2019. The Equal Employment Opportunity Commission issued a Dismissal and Notice of Rights to Plaintiff dated November 27, 2019. Plaintiff received the Dismissal and Notice of Rights on November 29, 2019. Plaintiff is filing this Complaint within ninety (90) days of the date of the receipt of the Dismissal and Notice of Rights from the Equal Employment Opportunity Commission. .

## VI. JURY TRIAL DEMAND

49. Plaintiff hereby demands a trial by jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the work environment be remedied in full and that the court, after a jury trial:

a. Declare the actions complained of herein to be illegal;

b. Issue an injunction enjoining the Defendants, their agents, employees, successors, attorneys and those acting in concert or participation with the Defendants and at their direction from engaging in the unlawful practices set forth herein and any other employment practice shown to be in violation of Title VII, the ADAAA and the Family Medical Leave Act.

c. Award Plaintiff compensatory damages for pain and suffering and infliction of emotional distress;

d. Award Plaintiff his costs and expenses in this action, including reasonable attorney's fees, other litigation expenses; and

e. Grant such other and further relief as may be just and necessary to afford complete relief to Plaintiff.

This 27th day of February, 2020.

/s/ Geraldine Sumter
Geraldine Sumter
N. C. Bar No. 11107
Ferguson Chambers & Sumter, P.A.
309 East Morehead Street, Suite 110
Charlotte, North Carolina 28202
Telephone: (704) 375-8461
Facsimile: (980) 938-4867
Email: gsumter@fergusonsumter.com

Attorney for Plaintiff

11